UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Action No. 5:17-cr-6-JMH |
| v. | ) | |
| JOYCE MINTON, et al., | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\* \* \*

This matter is before the Court on the United States' Motion for Preliminary Order of Forfeiture and Forfeiture Money Judgment. [DE 102]. The defendants responded [DE 105, 108, and 109] and the United States replied. Around this same time, the Court received sentencing memoranda from all three defendants and the government. [DE 106, 107, 110, and 112]. The defendants objected to the government's loss amount for the purposes of sentencing, the amount of restitution, and the amount the government seeks in its forfeiture motion. While loss, restitution, and forfeiture are distinct determinations, the testimony and evidence supporting the government's arguments overlapped significantly. Consequently, the Court held a hearing on October 2, 2017, at which it received testimony and evidence on these issues. The defendants had the opportunity to cross-examine the government's witness and put on their own evidence at the hearing.

1

**BACKGROUND**

On June 12, 2017, the jury in this case returned a verdict of guilty against Joyce Minton, Aaron Brooke Warren, and James Minton on numerous charges relating to their scheme to defraud their employer, Clark Machine Tool & Die ("Clark Machine"); however, they were also acquitted of a number of counts in the Indictment. [DE 90-92] The Indictment contains a forfeiture allegation seeking a money judgment in the amount of the proceeds of the scheme as well as property alleged as directly forfeitable proceeds or property involved in/facilitating the criminal offenses. [DE 1]. The parties agreed to waive the jury determination and agreed to let the Court determine the forfeiture issues. *See Libretti v. United States*, 516 U.S. 29, 49 (1995) ("the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection."); *United States v. O'Dell*, 247 F.3d 655, 679 (6th Cir. 2001) (if jury is waived, court must determine if defendant is owner of property before entering order of forfeiture).

In the forfeiture phase of a criminal case, the United States has the burden of establishing the forfeitability of the property by a preponderance of the evidence. *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir. 1992); *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007). Property is directly forfeitable

if the Court determines that the United States has established the requisite nexus between the property and the crime for which the defendants have been convicted.  See 21 U.S.C. 853(a); Rule 32.2(b)(1) and (2).  In determining the nexus issue, the Court may rely on evidence from the guilt phase of the trial.  *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007).  The requisite nexus exists if the property in question is in fact the proceeds of the offense, constitutes facilitating property or property involved in the offense, or has another relationship to the offense that the applicable forfeiture statutes require.  The government seeks forfeiture pursuant to 18 U.S.C. § 982(a)(1)and (2) and 18 U.S.C. § 981(a)(1)(C).  Forfeiture is mandatory, and is not excused by the fact that the defendant dissipated the actual money derived from the offense. Fed. R. Crim. P. 32.2(b) and (c).

Pursuant to *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), the United States does not seek joint and several money judgments for the proceeds of the overall conspiracy.  The government requests the Court enter a money judgment against each defendant in the amount each individual personally obtained from the offenses for which he or she was convicted.  In calculating restitution and loss amount, however, the Court will impose the "joint and severally liable" formula, in which one dollar of loss may be allocated to more than one defendant, if more than one defendant was involved in the commission of that crime.

3

**ANALYSIS**

After thoroughly reviewing and considering the evidence and testimony presented at the hearing on October 2, 2017, the trial exhibits and testimony, and the affidavits in the record, the Court finds the forfeiture, restitution, and loss amounts for each defendant as set forth below.

**AARON BROOKE WARREN**

**Forfeiture**

The jury convicted Aaron Brooke Warren of 30 counts of mail fraud, conspiracy to commit mail fraud, and 3 counts of money laundering. Mr. Warren was acquitted of two counts of mail fraud and one money laundering charge. The government seeks a forfeiture money judgment in the amount of $492,275 against Mr. Warren.[1] This includes over $94,000 in charges to Mr. Warren's company credit card for items that were sent through the mail. There was significant, conflicting trial testimony on which credit card charges were authorized; and, ultimately Mr. Warren was acquitted of one count of mail fraud related to the credit card purchases. The evidence presented at the forfeiture hearing includes illegible copies and notes from Sue Clark, one of the principals at Clark Machine, who was not present at the hearing. The jury convicted Mr. Warren of $32,531 in mail fraud. The Court finds

---

[1] For the ease of the reader, dollar amounts herein have been truncated to eliminate the decimal places.

there is insufficient proof on the remaining amount the government claims should be included in the money judgment related to the Visa and Lowe's company credit cards and agrees with the defendant that the government has not proven by a preponderance of the evidence that these were all unauthorized expenditures. Furthermore, many of the receipts entered into evidence are illegible.

The Court will include the checks sent by mail to Estes Motorsports, written by Joyce Minton and drawn on Clark Machine's bank account, as well as the checks written to Mr. Warren or BW Motorsports by Total Performance Solutions.  There was ample testimony at trial that supports that these were unauthorized expenditures and part of a larger mail fraud conspiracy, and Mr. Warren was found guilty of all related counts in the Indictment. Also included in the forfeiture amount is $8,650.00 for the HVAC equipment in Count 17.  The United States claims another $43,081 in unauthorized checks that were part of the mail fraud scheme. The Court finds there was lack of testimony and evidence on these checks to conclude by a preponderance of the evidence that these charges not included in the Indictment were part of the scheme.

For the reasons stated above, the Court will enter a preliminary money judgment against Aaron Brooke Warren in the amount of $387,611.

**Loss**

5

For the same reasons as set forth above, the Court finds the loss amount to be $387,611 plus $19,126. The additional $19,126 represents the work done at Clark Machine for Gary Stanton for which Clark Machine was never paid, because Mr. Warren negotiated a deal with Mr. Stanton whereby Mr. Stanton would "pay" for the work with racecar parts shipped to Mr. Warren. The $4,504 check from April 10, 2007, written to Gary Stanton and signed by Joyce Minton is excluded from Mr. Warren's loss amount because there is insufficient evidence in the record to connect Mr. Warren to that transaction. The $812.00 charged to Bruce Bennett's account and paid in $500 cash directly to Mr. Warren is excluded because there is insufficient evidence to conclude this transaction involved the use of the mail or bank fraud. Mr. Warren's total restitution and loss amount is $406,737.

## JAMES MINTON

### Forfeiture

James Minton was convicted of seven counts of mail fraud. At trial and the forfeiture hearing, the evidence revealed Mr. Minton perpetrated his fraud by conspiring with his wife to write checks from Clark's bank account, which Ms. Minton signed and mailed to vendors, who then delivered goods to Mr. Minton's home address. The government produced additional evidence at the forfeiture hearing regarding a John Deere tractor loan that was paid using $19,936 of unauthorized funds from Clark Machine's checking

account and mailed to the lienholder, as well as an unauthorized check in the amount of $5,692, mailed to Citi Cards to make a payment on Mr. Minton's credit card. The Court finds that the evidence presented on the John Deere loan payment and the Citi Card payment was more than sufficient to meet the government's preponderance of the evidence burden. Although those two payments were not specifically charged in the Indictment, these payments were part and parcel of the larger mail fraud scheme for which Mr. Minton was found guilty on all counts for which he was charged. Accordingly, the Court will enter a preliminary money judgment against Defendant James Minton in the amount of $31,366, which is the total of the two payments discussed above and the seven counts in the Indictment.

**Loss**

The United States asks the Court to use an amount far greater than $31,366 in calculating Mr. Minton's sentence or restitution: $1,826,440. The United States argues that because James Minton was found guilty of Count 39, the mail fraud conspiracy charge, he should have a loss amount that takes into account all of the mail fraud that occurred.

The United States asks the Court to look back 17 years at mail fraud and bank fraud and use those amounts to calculate Mr. Minton's sentence. The proof on the unindicted conduct is not entirely reliable. As the government's forensic accountant,

7

Billianne Withers, testified at the hearing on the instant motion, the government's information regarding which checks were authorized or unauthorized came from Sue Clark. Ms. Clark combed through almost two decades of records and reported to Ms. Withers as to what was authorized or not authorized. Ms. Withers then testified to those hearsay statements.[2] While Mr. Minton has been convicted of a mail fraud scheme and conspiracy to commit mail fraud, the testimony at trial focused on the more recent fraud and those counts specifically charged in the Indictment. The information on the uncharged mail fraud for the years prior to those in the Indictment is insufficient and it would be unjust to include those in calculating Mr. Minton's sentence. The Court will include the additional mail fraud from the years charged in the Counts 33-38, 2013-16, in calculating Mr. Minton's loss amount.

The Court has even less information regarding the bank fraud the government seeks to include in Mr. Minton's loss amount. The government also argues that although James Minton was not even charged with bank fraud, conspiracy to commit bank fraud, or aiding and abetting either of those crimes, he should be held responsible

---

[2] As an example of the evidence upon which the government relies, the Court points to Attachment A introduced as an exhibit at the hearing. On Bates number pages 003958-60, there is an invoice and receipt for $6,544.05 and one line from what appears to be a spreadsheet listing the check number. These documents are dated April 2, 2004 with a "ship to" address of "Clark Machine Tool & Die" at their office location. The Court cannot conclude by a preponderance of the evidence that this was fraud.

8

for those amounts as well by having a sentence which includes those amounts.

The Court recognizes the seriousness of Mr. Minton's involvement, generally, in the scheme to defraud Clark Machine. The Court also notes that by virtue of his relationship with Ms. Minton, he benefitted from the bank fraud and money laundering, and, at best, turned a blind eye to her clearly criminal activity, if not participated in it. The government, however, did not prove this beyond a reasonable doubt at trial or by a preponderance of the evidence at the forfeiture and loss hearing. The Court will take the seriousness of these matters into consideration pursuant to 18 U.S.C. § 3553(a); however, the Court declines to calculate Mr. Minton's sentence to include bank fraud or conspiracy to commit bank fraud, crimes for which he was not charged and did not necessarily defend against.

The Court finds the restitution and loss amount for Mr. Minton to be $45,871.

## JOYCE MINTON

### Forfeiture

The United States seeks a money judgment in the amount of $1,754,585 against Joyce Minton. The evidence at trial showed that Ms. Minton perpetrated the majority of her fraud on Clark Machine by cashing Clark Machine checks written to "petty cash" and pocketing that money on a weekly basis. There was considerable

testimony at trial regarding the (limited) petty cash used at Clark Machine, the petty cash checks cashed by Ms. Minton, and how Ms. Minton covered up her theft by using the cash to purchase cashier's checks to pay her bills. Ms. Minton stole up to $3,000 per week for a decade and a half using this scheme. The jury found Ms. Minton guilty of $100,575.00 in petty cash bank fraud at trial. At the October 2, 2017 hearing, Billianne Withers testified to an additional $1,235,649 in petty cash checks not charged in the Indictment. Although this number is admittedly inexact, Ms. Withers testified that the government arrived at this figure by using the most conservative estimates of loss and the most liberal estimates of Clark Machine-authorized petty cash.[3] Upon review of the record, the Court agrees with this estimate and holds that to the extent the figure is inexact, it is to the benefit of Ms. Minton. In addition to the petty cash checks, Ms. Minton was convicted of issuing extra paychecks to herself. The net amount she received from the extra paychecks was $74,712. Ms. Minton also issued a bonus check to herself (Count 40) in the amount of $9,883 to purchase a Corvette.

---

[3] The United States requested the Court use $46,124 as the amount of actual Clark Machine-approved petty cash receipts it uncovered in its investigation in calculating the forfeiture amount; however, the Court sees no reason to use this lower number because the government has presented proof that the authorized petty cash receipts could be as high as $6,000 per year (or $102,000 total since the year 2000).

The United States submitted copies of $277,207 in checks from 2000-16 Ms. Minton wrote to Mr. Minton or his various businesses. There was testimony at trial that Mr. Minton did work for the Clarks, both at their business and at Clark Machine, but that this work was minimal in comparison to the large number of checks and dollar amounts paid to him, in checks signed by Ms. Minton, during this time period. From 2010-14 the checks offered into evidence by the government were less than what the OSAS system print outs showed there were or should have been payments to James Minton.[4] The United States did not present a satisfying explanation for that inconsistency. Furthermore, the Indictment charges Ms. Minton with bank fraud, including inflated and undeserved paychecks to Mr. Minton, "from on or about January 17, 2007, and continuing through in or about June 2016." [DE 1, Indictment, ¶¶ 8-11]. The Court will not enter a money judgment for years prior to 2007, the earliest date of bank fraud charged in the Indictment, because the proof at trial was minimal regarding these earlier dates. Accordingly, the amount of the money judgment against Joyce Minton attributable to undeserved checks written to James Minton or his businesses is $51,758.

---

[4] See Hearing Attachment A, Book II, chart labeled "James Minton Summary of Checks," OSAS print outs, and check copies (Bates numbers 003627-89). The years in which the "checks total" was less than the "pay for jobs done" were 2010-14. Billianne Withers testified at the restitution hearing that these checks were the ones the Clarks and United States could locate.

11

For the reasons stated above, the Court will enter a preliminary money judgment in the amount of $1,472,577 against Joyce Minton.

## Loss

The United States argues the guideline loss amount for Ms. Minton is $1,912,969. Of that total, $69,790 represents her "salary above the approved rate," (or as it was referred to in the Indictment and at trial, the alleged "inflated paychecks") including Counts 41-43 in the Indictment, for which Ms. Minton was acquitted. The Court declines to include the acquitted conduct in the loss amount.

The total also includes $30,315 for "inflated bonuses" dating back to 2000, despite the fact that the Court entered directed verdict on the "extra bonus" charges in the Indictment, Counts 50-53. The United States argues the bonuses from 2000-05 should be included because at that time Sue Clark, not Danny Clark (who testified to approving bonuses), was approving bonuses, thus, the government argues, these were not authorized—simply because Sue Clark told Billianne Withers they were not authorized more than a decade ago. This is insufficient for the Court to include these payments in the loss calculation, except for the $9,883 check

listed in Count 40 of the Indictment, which was the "extra bonus check" Ms. Minton used to purchase a Corvette.[5]

Similarly the Court will not include the majority of the "company check purchases" because Ms. Minton was acquitted of nearly every count in the Indictment which related to those counts. The Court finds it would be unjust in this scenario to calculate Ms. Minton's sentence using conduct (or related conduct) for which she was found not guilty by a jury. The exceptions are the check to Stivers for the HVAC equipment that was for the benefit of Mr. Warren (Count 17), the checks to Central Equipment that were for items Mr. Minton received (Counts 33-38), and the Citi Card and John Deere payments discussed in the section regarding Mr. Minton, *supra*. The total of unauthorized company check purchases is $40,016.

The Court agrees with the government that the accurate representation of the loss amount as related to Counts 44-48 is the gross amount of the checks Ms. Minton issued to herself as extra paychecks, $101,463. As explained in detail above, the Court is not convinced by a preponderance of the evidence that the scheme included $277,207 in unapproved payments to James Minton,

---

[5] This check is listed in the Indictment as $9,883.62, in Attachment A to the presentence report as $15,425, and in the "Minton/Warren Loss Amount" spreadsheet used at the hearing at $10,384. One of these greater amounts may represent the gross amount of the check; however, due to uncertainty in the record, the Court will utilize the smallest figure, $9,883.62, which is also the amount shown on the face of the check (Trial Exhibit 84A).

13

written on Clark Machine's account by Ms. Minton. The loss amount for these checks, as part of the bank fraud scheme, will be $51,758.00.

As explained in the restitution section, *supra*, the Court holds the total amount of money Ms. Minton stole using petty cash checks was $1,336,224.

Accordingly, the total restitution and loss amount for Ms. Minton is $1,539,344.

## OTHER PROPERTY

Based upon the jury's verdict and the nexus that exists between vehicles and equipment listed in the United States' Motion for Preliminary Order of Forfeiture, the Court will grant the government's motion as to those items.

## CONCLUSION

For the reasons stated herein and the Court being sufficiently advised, **IT IS ORDERED** that:

(1) The United States' Motion for Preliminary Order of Forfeiture and Forfeiture Money Judgment [DE 102] is **GRANTED** as to the dollar amounts and property stated herein;

(2) The restitution and loss amounts to be used at sentencing are set forth herein; the remaining objections to the presentence reports will be resolved at the sentencing;

(3) A Order of Preliminary Judgment and Order Money Judgment in conformity with this Memorandum Opinion and Order will be entered simultaneously herewith.

This 17th day of October, 2017.



Signed By:
Joseph M. Hood
Senior U.S. District Judge